# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2221

JANE DOE,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO,

*Defendant-Appellee,*

and

CHARLES WHITE,

*Defendant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 928—**Joan Humphrey Lefkow**, *Judge.*
_____

ARGUED DECEMBER 1, 2003—DECIDED FEBRUARY 27, 2004
_____

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, who is *not* named "Jane Doe," brought suit against a Chicago police officer, Charles White, charging him with both federal civil rights violations (42 U.S.C. § 1983) and tortious misconduct under Illinois law. She also named as a defendant the City of Chicago, contending that it is liable for White's misconduct

under the doctrine of respondeat superior, as codified in 745 ILCS 10/9-102; see *Yang v. City of Chicago*, 137 F.3d 522, 526-27 (7th Cir. 1998); *Kolar v. County of Sangamon*, 756 F.2d 564, 566-67 (7th Cir. 1985). (Her complaint contained another claim against the City, but she later abandoned it.) The City moved for summary judgment with respect to the claim against it, on the ground that White's tortious behavior was outside the scope of his employment. The district judge granted the motion and entered a final judgment in favor of the City under Fed. R. Civ. P. 54(b), which permits the judge to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," though "only upon an express determination that there is no just reason for delay." The judge's action enabled Doe to appeal immediately even though her claims against White have yet to be resolved in the district court, where trial has been stayed to await the outcome of the appeal.

As an aside, we express our concern about the plaintiff's litigating under a pseudonym. E.g., *Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); *K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997); *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463-64 (D.C. Cir. 1995) (per curiam). Judicial proceedings are supposed to be open, as these cases make clear, in order to enable the proceedings to be monitored by the public. The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity. Not that concealment of a party's name is always improper. The presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the plaintiff (normally the plaintiff is the party whose identity is concealed, except in cases in which the defendant's identity is unknown to the plaintiff when the suit is brought, as in

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)) exceeds the likely harm from concealment. *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69 (9th Cir. 2000); *M.M. v. Zavaras*, 139 F.3d 798, 802-03 (10th Cir. 1998); *James v. Jacobson*, 6 F.3d 233, 238-43 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 184-86 (11th Cir. 1981).

Although the plaintiff in this case is charging sexual harassment, sexual harassment cases are not brought anonymously even when the facts are gamier than they are here. The plaintiff is not a minor, a rape or torture victim (cf. *Doe v. Wright*, 82 F.3d 265, 267 (8th Cir. 1996), where the plaintiff had been forced by the defendant police officer to undress and perform "various sex acts in his presence"), a closeted homosexual, or—so far as appears—a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing. The qualification in "so far as appears" is important, however. The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously, e.g., *Does I Thru XXIII v. Advanced Textile Corp.*, *supra*, 214 F.3d at 1068-69; *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981); *Doe v. Stegall*, *supra*, 653 F.2d at 186; *Gomez v. Buckeye Sugars*, 60 F.R.D. 106 (N.D. Ohio 1973), and could be a factor in a case such as this in which the plaintiff is charging a police officer with sexual misconduct that he denies. But there is no indication that this is the basis on which the plaintiff is seeking to litigate anonymously. Indeed, there is no indication of *any* basis for her proceeding thus. She merely filed the complaint anonymously, there was no objection, and the judge conducted no inquiry into the propriety of anonymity. The judge's failure to make an independent determination of the appropriateness of the plaintiff's concealing her name was error because, as we have explained, "the use of fictitious names is disfavored, and the judge has an inde-

pendent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin, supra,* 112 F.3d at 872.

Given the procedural posture, we construe the facts as favorably to Doe as the case permits. She was in an auto accident and sought the help of a police officer, who happened to be the defendant Charles White. He was attracted to her, and asked her to have a drink with him, but she refused. He started calling her at her home at night, pestering her for a date. She refused steadily, and wouldn't give him her address. But one day while he was on duty and in his police car, he saw her driving and ordered her to pull over. He told her she'd done nothing wrong and he wasn't going to give her a ticket, but he nevertheless insisted on examining her driver's license—so he could learn her address. One morning a couple of weeks later he broke into her house while she was sleeping. She woke up and encountered him in the kitchen. He grabbed her, rubbed against her, and even exposed his penis to her. She ordered him to leave the house, threatening to call 911 if he didn't leave. He replied that he "is 911," and reminded her that he worked in her district. After another break-in by White and more harassing phone calls, Doe complained to the police department's Office of Professional Standards. Following a hearing at which White denied Doe's charges, claiming that the two had had a voluntary relationship that had gone bad, the police review board found him guilty of telephone harassment and trespass and ordered him suspended for ten months.

It is doubtful that if Doe obtains a substantial money judgment against White he will have the wherewithal to pay it. But if in harassing Doe he was acting within the scope of his employment by the City as a police officer, then under state law, as we noted at the outset, the City must pay the

judgment. The general rule, on which the district judge relied in granting the City's motion for summary judgment, is that an employer is liable for an intentional tort committed by its employee only if the tort was in furtherance of his employment, that is, only if the employee's motive, or at least *a* motive, in committing the tort was to serve his employer. E.g., *Wright v. City of Danville*, 675 N.E.2d 110, 117-18 (Ill. 1996); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912-13 (7th Cir. 1994) (Illinois law); *Illinois Founders Ins. Co. v. Smith*, 596 N.E.2d 59, 64 (Ill. App. 1992); *Gregor v. Kleiser*, 443 N.E.2d 1162, 1166 (Ill. App. 1982); *Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. 1981); W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* 505 (5th ed. 1984). Only *Wright* involves the indemnity statute, 745 ILCS 10/9-102, but the other cases we have cited (and many others we could cite), plus the *Restatement (Second) of Agency* § 228(2) (1958), also hold that unless in furtherance of the business of the tortfeasor's employer, an intentional tort is not within the scope of his employment; and that would bring it outside the indemnity statute as well.

So if White had pulled over Doe both to ticket her for a traffic violation *and* to get her address for entirely personal reasons, that part at least of the harassment of which she complains (the smallest part) would be within the scope of his employment. But Doe insists that even if White's motives were entirely personal throughout, his torts were within the scope of his employment because he is a police officer who used (that is, misused) his authority to effectuate his personal design.

The proposition that scope of employment should be interpreted more broadly when the employee is a police officer has yet to be considered by the Supreme Court of Illinois, but it has a footing in other jurisdictions and may well be the wave of the future. *Mary M. v. City of Los An-*

*geles*, 814 P.2d 1341, 1347-52 (Cal. 1991); *West v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997); *St. John v. United States*, 240 F.3d 671, 676-78 (8th Cir. 2001); *Primeaux v. United States*, 102 F.3d 1458 (8th Cir. 1996); *Red Elk v. United States*, 62 F.3d 1102, 1104-07 (8th Cir. 1995); *Ingram v. City of Indianapolis*, 759 N.E.2d 1144, 1146-48 (Ind. App. 2001); *Applewhite v. City of Baton Rouge*, 380 So. 2d 119, 121-22 (La. App. 1979); *Carney v. White*, 843 F. Supp. 462, 479-80 (E.D. Wis. 1994), affirmed under the name *Carney v. Village of Darien*, 60 F.3d 1273 (7th Cir. 1995); cf. *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244, 245, 249-50 (Ind. 1989); *Gutierrez v. Thorne*, 537 A.2d 527 (Conn. App. 1988); see generally 1 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation* § 7:12 (rev. ed. 1994 & Supp. 2001); Rochelle Rubin Weber, Note, " 'Scope of Employment' Redefined: Holding Employers Vicariously Liable for Sexual Assaults Committed by Their Employees," 76 *Minn. L. Rev.* 1513 (1992). It is not that being a police officer creates access that facilitates the commission of intentional torts. That is true of many employments. A meter reader gains access to homes by virtue of his employment by the electric company, but if he steals something from the home the theft is not deemed to be within the scope of his employment. See *Hendley v. Springhill Memorial Hospital*, 575 So. 2d 547 (Ala. 1990); *Grimes v. B.F. Saul Co.*, 47 F.2d 409 (D.C. Cir. 1931). The difference between him and other intentional tortfeasors is slight. The situation of a police officer, however, is significantly different from that of a meter reader. The officer is armed, has authority to arrest that is considerably broader than the authority of a private person to make a "citizen's arrest," has access to all sorts of personal information, is an authority figure trained to develop and project an intimidating aura, and may seem to be above the law ("I am 911").

Indispensable to law and order, he is also and inescapably a dangerous instrumentality. A person who keeps a tiger in his backyard is strictly liable for the injuries caused by it, *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995), and when an independent contractor is hired to conduct an abnormally dangerous activity the principal is strictly liable for injuries caused by the activity. *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 938-39 (7th Cir. 1986); *Crane v. Conoco, Inc.*, 41 F.3d 547, 549-50 (9th Cir. 1994); *Restatement (Second) of Torts* § 427A (1965). Maybe by analogy a police department should be held strictly liable for torts of police officers who use their official powers to commit the torts. As in the ultrahazardous-activity cases, the power of a rogue police officer to do harm is so great that more than ordinary care on the part of his employer may be required in order to provide adequate protection to the public.

We cannot be certain whether the Supreme Court of Illinois would accept the analogy and hold that White, if the facts are as contended by Doe, was acting within the scope of his employment in committing the acts of which she complains. But it might; and at argument the City's lawyer joined Doe's lawyer in urging us to certify the question to the Supreme Court of Illinois. Had the City opposed certification, we would be inclined to deny certification outright. A litigant who wants an adventurous interpretation of state law should sue in state court (if she can do so—but Doe could have done so because state courts have jurisdiction concurrent with the federal courts to enforce 42 U.S.C. § 1983) rather than ask us to declare such an interpretation to be the law of Illinois. *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1087-88 (7th Cir. 1990); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985); *Veilleux v. National Broadcasting Co.*, 206 F.3d 92, 131 (1st Cir. 2000); *Witzman v. Gross*, 148 F.3d 988, 991 (8th

Cir. 1998); *In re C-T of Virginia, Inc.*, 958 F.2d 606, 611-12 (4th Cir. 1992); *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231-32 and n. 12 (5th Cir. 1988). And it's not a proper alternative to proceeding in the first instance in state court to sue in federal court but ask that the suit be stayed to permit certifying the interpretive issue to the state court, thus asking that the suit be split between two courts.

Certification to the Illinois supreme court is in any event premature because the facts bearing on the scope of employment issue have not yet been determined. White denied Doe's charges at the hearing before the police review board, and the board did not find him guilty of the most serious of her charges. The jury in White's trial in the district court may disbelieve Doe's evidence and reject her entire case, in which event the issue of the City's vicarious liability will be moot. Or the trial may cast the facts in a different light from the version that the procedural posture of this appeal requires us to accept without our knowing whether it is the correct version. Whether the scope of a police officer's employment should be deemed broader than that of other employees is a difficult and important question that we should not ask the state supreme court to answer on make-believe facts. Cf. *Eley v. Pizza Hut of America, Inc.*, 500 N.W.2d 61 (Ia. 1993); *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 630 (Ore. 1991); *Catlin v. Ambach*, 820 F.2d 588, 591 and n. 2 (2d Cir. 1987); *Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir. 1979); 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4248, p. 174 (2d ed. 1988). We recall how an entire branch of the tort law of privacy was created by a case in which critical facts, though possibly fictitious, were taken as true because the defendant had demurred rather than contested them. The case is *Melvin v. Reid*, 297 Pac. 91 (Cal. App. 1931), which created a right (now defunct, *Willan v. Columbia County*, 280 F.3d 1160,

1162-63 (7th Cir. 2002)) to prevent the publicizing of one's criminal history on the basis of uncontradicted allegations that Mrs. Melvin, a former prostitute who had been prosecuted for murder but acquitted and after her acquittal had married and changed her name, had lived a blameless life in a community in which her past was unknown until the defendant made a movie about the murder case, using her maiden name.

It does not follow from our declining either to certify the question of the City's liability or to venture onto terrain that the Supreme Court of Illinois has yet to set foot on that we must affirm the judgment in the City's favor. The district judge jumped the gun when she entered a final, appealable judgment on Doe's claim against the City. We have warned repeatedly against trying to resolve indemnity before liability. *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995); *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833-34 (7th Cir. 1992). This case illustrates the inadvisability of the practice. The issue of the City's responsibility for the torts of its police officers is a difficult one that the district judge should not have attempted to resolve before the actual facts bearing on the issue were determined. The ruling was premature and so therefore was the entry of final judgment under Rule 54(b), which made the ruling immediately appealable.

The judge had the *power* to enter such a judgment; whenever there are multiple parties, an order that finally resolves a party's liability is eligible to be made final, and therefore appealable, under Rule 54(b), though the case continues in the district court between the other parties. She had the power, but not the duty. Fed. R. Civ. P. 54(b); *Continental Casualty Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518-19 (7th Cir. 1999); *Horn v. Transcon Lines, Inc.*, 898

F.2d 589, 591 (7th Cir. 1990); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997). As there was "just reason for delay" until the claims against White were resolved—namely the need to develop a factual basis for determining how broad the City's vicarious liability for the torts of its police officers should be, a basis which might show that her ruling on the City's responsibility for White's conduct was erroneous— the judge should have deferred entering judgment. Her refusal to wait was based on Doe's unwillingness to settle until the City's liability was determined. Under Illinois law, a settlement with the agent extinguishes the principal's liability, *Gilbert v. Sycamore Municipal Hospital*, 622 N.E.2d 788, 796-97 (Ill. 1993); otherwise the agent would gain nothing from the settlement, since if the plaintiff proceeded against the principal and obtained a judgment, the principal could turn around and seek indemnity from the agent. *Id.* at 797. But the deadlock over settlement was not a good reason for the judge to jump the gun and decide indemnity before liability and then allow a premature appeal. That decision, and therefore the Rule 54(b) judgment, must be vacated. *Horn v. Transcon Lines, Inc., supra*, 898 F.2d at 593-95; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc., supra*, 106 F.3d at 21-22; *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 44-46 (1st Cir. 1988).

One loose end remains to be tied up. Doe claims that when she was pulled over by White she had not committed a traffic offense, and she has used this claim to bolster her contention that White was harassing her. Before the police review board, and doubtless to be renewed at his trial in the district court, White claimed that she *had* committed a traffic offense; and in a rather desperate effort to bring White's conduct within the traditional scope of a police officer's employment, Doe now asks us to accept White's version and treat the traffic stop as a dual-motive act, an act that involved stopping a violator of the traffic laws because it was his duty, as well as to get the violator's address for a

purely personal reason, and therefore an act that cast liability on the City under standard principles of respondeat superior.

It is late in the day for Doe to be trying to change her version of the facts, and in any event might not do her any good. She isn't seeking damages for the petty inconvenience of being stopped for a few minutes and then let go without a citation—those damages would be utterly negligible—but for the telephone harassment, the repeated breaking and entry, and the physical assault. The only connection between the traffic stop and the injurious acts is that the stop was the method by which White got her address, that is, got access; and as we noted with reference to the meter reader, the fact that one's employment gains one access to a person's home does not make the employer liable for a purely personal act within the home. For that act is not in furtherance of the employer's business, though the gaining of access may have been. At least that is the general rule; the scope of employment of a police officer may be broader than that of a meter reader, but that is the issue that must abide a decision by the Supreme Court of Illinois. We intimate no view on what that decision should be.

The judgment of the district court is vacated for the reasons explained in this opinion and the matter remanded.

VACATED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*