# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2700

NICOLE DELGADO,

Plaintiff-Appellant,

v.

JAMES C. STEGALL and
WESTERN ILLINOIS UNIVERSITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-1332—**Michael M. Mihm**, *Judge.*

_____

ARGUED APRIL 5, 2004—DECIDED MAY 4, 2004

_____

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Nicole Delgado, a former student at Western Illinois University, a state university, claims to have been harassed by a professor at the university named James Stegall. She filed this suit for damages against the university under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681-1688, and against Stegall under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The district judge granted summary judgment for both defendants. He ruled that Delgado had failed to establish a violation of Title IX by

the university and that Title IX provides the exclusive
federal remedy for a teacher's misconduct toward a student;
the latter ruling let Stegall off the hook.

Delgado, a music student at Western Illinois, was hired by
her voice teacher, Stegall, to be his "office assistant" during
her sophomore year. The record does not reveal the duties
of the position except that they were somehow connected to
Stegall's job as choral director. Part-time work for professors
is a common activity of college students, and although
sexual harassment of university employees is not actionable
under Title IX if the employee could obtain relief under Title
VII, *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 861-
62 (7th Cir. 1996); *Lakoski v. James*, 66 F.3d 751, 753-58 (5th
Cir. 1995), there is no contention that the kind of part-time
position that Delgado held (whatever exactly it involved),
even though it made her an employee of the university,
precludes her from complaining that she was harassed as a
student and therefore can seek a remedy under Title IX. We
cannot find any cases dealing with the question but it seems
to us that harassment of a student interferes with her
educational experience whether or not she is also a part-
time employee; the harassment of a nonstudent employee
could have no such effect.

Stegall made advances to Delgado after she became his
office assistant, repeatedly asking her "Do you love me?"
and "Would you ever marry a man like me?" He would also
ask her for hugs, rub her shoulders, and tickle her. Troubled
by these attentions, she confided her distress to another
music teacher, a woman, who told her to "remove herself
from the situation, get herself to counseling, get her parents
involved, and go see the chair and/or the dean." She did
speak to a counselor about things that were bothering her,
including "the uncomfortableness of the comments [Stegall]
was making." But neither the counselor nor the music

teacher reported Stegall's misconduct to his dean or any other university official. Eventually, however, though only after transferring to another college, Delgado filed a complaint with Western Illinois University against Stegall. The university responded by directing him to undergo training in proper behavior toward female students and by placing "a letter . . . in Dr. Stegall's personnel file, outlining the actions to be taken and the method for evaluating their effectiveness."

It turns out that Stegall had made advances to three other woman students, but they had never filed complaints and his conduct hadn't come to the attention of the university administration. Actually there had been a fourth episode, ten years earlier, that had led to a complaint being made to the university about Stegall but Delgado makes nothing of this—in fact does not even mention it in her briefs.

Two years before Stegall's alleged harassment of Delgado, his dean, James Butterworth, Dean of the College of Fine Arts and Communications at the university, had investigated possible sexual harassment by unnamed members of the art faculty. Stegall was and is a member of the music department, however, and no harassment by music faculty had been reported. Butterworth responded to the allegations concerning the art department by recommending to the university's president and provost the elimination of alcohol from social events sponsored by the department at which both teachers and students were present, the convening of meetings with current and incoming students to discuss the university's rules on fraternization and harassment, and the distribution of copies of the rules to all faculty. The recommendations were adopted and implemented.

Title IX prohibits sex discrimination in educational programs or activities supported by federal grants. 20 U.S.C.

§ 1681(a). The only remedy specified in the statute is the elimination of the federal funding, § 1682, but in *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979), the Supreme Court held that the statute by implication entitles a person injured by a violation to sue for damages. When, however, the claim for damages is based on the behavior of a teacher or of some other employee of the Title IX recipient, the plaintiff must prove that "an official of the [defendant educational institution] who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 277 (1998); see also *id.* at 290-91; *Davis v. Monroe County Board of Education*, 526 U.S. 629, 642-43 (1999); *Gabrielle M. v. Park Forest-Chicago Heights, Illinois School Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003); *Hayut v. State University of New York*, 352 F.3d 733, 750-53 (2d Cir. 2003). Western Illinois concedes that both Dean Butterworth and the chairman of the music department were officials clothed with the requisite authority. But it denies that either of them had actual notice of Stegall's misconduct toward Nicole Delgado (or any other student—which Delgado, by failing to mention the incident ten years earlier, has in effect conceded) or was deliberately indifferent to that misconduct.

Here a peculiarity of the Supreme Court's formula should be noted. Ordinarily, actual notice and deliberate indifference are alternative paths to proving knowledge. Deliberate indifference means shutting one's eyes to a risk one knows about but would prefer to ignore. *Boncher v. Brown County*, 272 F.3d 484, 486 (7th Cir. 2001); *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1314 (11th Cir. 2001). It thus corresponds to the criminal definition of recklessness, *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001); *Collignon v. Milwaukee County*, *supra*, 163 F.3d at 988;

*Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003), which the law treats as the equivalent of intentionality. *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998); *United States v. Ladish Malting Co.*, 135 F.3d 484, 488 (7th Cir. 1998); *J.I. Case Credit Corp. v. First National Bank*, 991 F.2d 1272, 1278 (7th Cir. 1993); *McGinty v. State*, 193 F.3d 64, 69-70 (2d Cir. 1999). For "if a person with a lurking suspicion goes on as before and avoids further knowledge, this may support an inference that he has deduced the truth and is simply trying to avoid giving the appearance (and incurring the consequences) of knowledge." *United States v. Ramsey,* 785 F.2d 184, 189 (7th Cir. 1986); see also *United States v. Giovannetti,* 919 F.2d 1223, 1226-29 (7th Cir. 1990). But under the Supreme Court's formula, the plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct, and must also prove that the officials having that knowledge decided not to act on it.

There is less to the distinction than meets the eye. Obviously a school's officials know in a general sense that there is a *risk* that one or more of its teachers will harass a student sexually, even if no such incident has ever occurred in the school. That is not the kind of knowledge that establishes recklessness should the officials take no action against the risk. When the cases speak of a "known" or "obvious" risk that makes a failure to take steps against it reckless they have in mind risks so great that they are almost certain to materialize if nothing is done, *Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *West By and Through Norris v. Waymire*, 114 F.3d 646, 650-52 (7th Cir. 1997); *Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995); *Coleman v. Rahija*, 114 F.3d 778, 785-86 (8th Cir. 1997), for it is only in such cases that reckless-

ness regarding the consequences if the risk materializes merges with intention to bring about the consequences (more precisely, to allow the consequences to occur though they could readily be prevented from occurring). And that ought to be enough for liability under Title IX.

So if, for example, Stegall had been known to be a serial harasser, Butterworth might well be found to have had a sufficient approximation to actual knowledge that Delgado would be harassed to satisfy the Supreme Court's standard. After all, in *Davis* the Court required knowledge only of "acts of sexual harassment" by the teacher, *Davis v. Monroe County Board of Education, supra*, 526 U.S. at 641, not of previous acts directed against the particular plaintiff. See also *id.* at 653-54 (attaching significance to the fact that there were "multiple victims who were sufficiently disturbed by G. F.'s misconduct to seek an audience with the school principal"); *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001); *P.H. v. School District of Kansas City*, 265 F.3d 653, 661-63 (8th Cir. 2001). But Stegall was not known by anyone in the university administration, such as Dean Butterworth, to be harassing other students. To repeat, Delgado attaches no weight to the ten-year-old episode, which would in any event be only weak evidence that Stegall's current students were at *so* high a risk of being harassed by him that university officials' knowledge of the earlier episode would make them reckless for having failed to take steps to prevent a recurrence.

Delgado's second claim is against Stegall and is based not on Title IX (which it could not be based on because only the educational institution itself—the grant recipient—can be a defendant in a suit under that statute, *Boulahanis v. Board of Regents*, 198 F.3d 633, 640 (7th Cir. 1999); *Smith v. Metropolitan School Dist.*, 128 F.3d 1014, 1018-21 (7th Cir. 1997); *Kinman v. Omaha Public School Dist.*, 171 F.3d 607, 609-

11 (8th Cir. 1999)), but on 42 U.S.C. § 1983, which creates a remedy for a person who is deprived of his or her federal rights under color of state law. Stegall is a state actor who, if the facts alleged by Delgado are correct, as we must assume in the posture of the case before us that they are, used his position to discriminate against her on the basis of her sex, in violation of her federally protected right to the equal protection of the laws. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). The question is whether by enacting Title IX Congress intended to extinguish the right to sue under section 1983 that Delgado would otherwise have. The district judge felt constrained by this court's decisions to answer yes, though he also expressed his disagreement with those decisions and with the result that they seemed to him to dictate in this case. We think his instincts were sound, but that the cases in question are distinguishable from the present one.

The doctrine to which Stegall appeals originated in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981), and goes by the name of the "sea clammers" doctrine. The plaintiffs in that case sought relief from pollution against state officials under federal statutes that provided comprehensive and fully adequate remedies. The Supreme Court had recently held, however, that section 1983, though typically used to enforce federal constitutional rights, reaches infringements of federal statutory rights as well. *Id.* at 19; *Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980). This ruling opened up the possibility that anyone who had a federal statutory remedy for a harm inflicted under color of state law could tack on a claim for relief under section 1983 as well. Worse, even if Congress hadn't intended that a particular federal statute be enforceable by private damages suits, a person injured by a violation of the statute would be able to enforce it privately under section 1983. By doing so he would not only be

bypassing the need to show that Congress in enacting the statute had intended that there be a private right to enforce it, but indeed acting contrary to Congress's intent. So, in the sea-clammers case, the Court decided to limit *Thiboutot*: after rejecting the plaintiffs' statutory claims, the Court held that section 1983 was not an available alternative because "it is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies." 453 U.S. at 20. The completeness of those remedies showed that Congress "intended to supplant any remedy that otherwise would be available under § 1983." *Id.* at 21.

The sea-clammers doctrine has been applied in a variety of contexts since its creation. See, e.g., *PrimeCo Personal Communications, Ltd. Partnership v. City of Mequon*, 352 F.3d 1147, 1151-53 (7th Cir. 2003); *Lollar v. Baker*, 196 F.3d 603, 608-10 (5th Cir. 1999); *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-6 (1st Cir. 1992); *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1366-70 (4th Cir. 1989). Of particular significance for the present case is our application of it in two cases that provide the entire basis for Stegall's argument and the district court's ruling. They are *Waid v. Merrill Area Public Schools*, *supra*, 91 F.3d at 862-63, and *Boulahanis v. Board of Regents*, *supra*, 198 F.3d at 639-40. In *Waid* a teacher, and in *Boulahanis* student athletes, complaining of sex discrimination, brought suit against the educational institution itself under Title IX, and also against employees of the institution under section 1983, and we held that the sea-clammers doctrine barred the section 1983 claims. The individual defendants in the two cases, however, were not teachers or other ordinary employees. In *Waid* they were the school district's director of curriculum and the principal of the school that had passed over Waid for a permanent appointment, and we described them as "officers" and "officials" of the school district. 91 F.3d at

862. In *Boulahanis*, similarly, the individual defendants are described as university "officials," though without further specification. 198 F.3d at 639.

It is easy to see why Title IX might be thought to supplant section 1983 suits against the school officials responsible for the policy or practice that violates Title IX, though not all courts agree. Compare *Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3d Cir. 1990), which we followed in *Waid* and *Boulahanis*, and also *Bruneau ex rel. Schofield v. South Kortright Central School District*, 163 F.3d 749, 756-59 (2d Cir. 1998), with *Crawford v. Davis*, 109 F.3d 1281, 1283-84 (8th Cir. 1997); *Seamons v. Snow*, 84 F.3d 1226, 1233-34 (10th Cir. 1996), and *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 722-24 (6th Cir. 1996), all rejecting the holding of *Pfeiffer*. The issue was expressly left open by the Supreme Court in *Gebser*. 524 U.S. at 292. Title IX, especially having been interpreted in *Cannon* to provide a damages remedy, furnishes all the relief that is necessary to rectify the discriminatory policies or practices of the school itself. But it is quite otherwise in a case such as this, in which the malefactor is a teacher whose malefaction is not a policy or a practice for which the school could be held liable under Title IX. In *Bruneau*, *Crawford*, and *Lillard*, teachers were named as section 1983 defendants along with school officials, but nothing was made of the distinction between the two types of defendant. The distinction is crucial. The only possible effect of applying the sea-clammers doctrine to this case would be to immunize Stegall from liability for his federal constitutional tort. How this could be thought to have been intended by Congress when it enacted Title IX without providing *any* damages remedy, or to advance the policies of that statute, is beyond us.

Stegall argues feebly that since states often indemnify their employees for tortious misconduct, the university may

be harmed financially if he is held liable to Delgado under section 1983. If such liability pinches the university, then it can cease indemnifying such tortfeasors; no statutory change would be necessary, because Illinois law requires the state to indemnify its employees only for the torts they commit within the scope of their employment. 5 ILCS 350/2(d); *Nichol v. Stass*, 735 N.E.2d 582, 587 (Ill. 2000); cf. 745 ILCS 10/9-102; *Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004); see generally Dan B. Dobbs, *The Law of Torts* § 273, p. 733 (2000). At common law the duty of indemnity actually runs the other way—the employee who commits a tort for which his employer is liable under the doctrine of respondeat superior has a duty to indemnify the employer if the latter is sued and loses. *Id.* § 333, p. 906; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 51, p. 341 (5th ed. 1984); *Restatement (Second) of Agency* § 401 and comment d (1958). Conceivably a university will have to pay a higher wage to teachers if they are exposed to the possibility of suit, but that is not a plausible basis for imputing to the Congress that enacted Title IX an intent to repeal the section 1983 rights of students. The legislators who enacted Title IX would be startled to discover that by doing so they had killed all federal remedies for sex discrimination by teachers of which the school lacked actual knowledge.

Stegall is asking us in effect to rule that Congress in Title IX repealed by implication a swatch of section 1983, though there is no possible conflict between these two federal statutes in cases in which relief is sought against a teacher or other nonmanagerial employee and no hint of such a purpose in the background or history of Title IX. The Supreme Court has said that where two federal statutes can coexist, the later one is not to be deemed to have repealed the earlier one unless there is some indication of a congres-

sional intent to do so, even though the result may be (though not in this case) to give the plaintiff a choice of federal remedies. *Branch v. Smith*, 538 U.S. 254, 273 (2003); *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 141-44 (2001). Even without a presumption against repeals by implication, Stegall's argument would fail because there is no reason to suppose that holding that Title IX wiped out a big piece of section 1983 would serve any of the purposes that animated Congress in passing Title IX. Delgado's suit against Stegall must therefore be reinstated.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A true Copy:

       Teste:

                                    _____
                                      *Clerk of the United States Court of*
                                        *Appeals for the Seventh Circuit*