In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1165
JOHN ROE,
 Plaintiff-Appellant,
 v.

STEVEN M. DETTELBACH, in his official capacity
as Director of the Bureau of Alcohol, Tobacco,
Firearms and Explosives, and MERRICK B. GARLAND,
Attorney General of the United States,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Illinois
 No. 3:21-cv-00125 — J. Phil Gilbert, Judge.
 ____________________

 ARGUED SEPTEMBER 22, 2022 — DECIDED JANUARY 27, 2023
 ____________________

 Before WOOD, HAMILTON, and ST. EVE, Circuit Judges.
 WOOD, Circuit Judge. This suit is about a person’s right to
have a gun part called a “drop-in auto sear.” John Roe, litigat-
ing under a pseudonym to avoid potential criminal liability,
ﬁled suit for a judgment declaring that he was entitled to have
and keep a drop-in auto sear that he currently possesses. The
2 No. 22-1165

district court dismissed the case without prejudice for lack of
standing, concluding that federal courts could not redress
Roe’s injury. The court’s action was correct, but not because
Roe lacked standing. Instead, he failed to state a claim on
which relief may be granted. See FED. R. CIV. P. 12(b)(6). We
have modiﬁed the judgment to be one with prejudice, and as
so adjusted, we aﬃrm.
 I
 A
 Drop-in auto sears can be installed into semi-automatic
guns; once in place, they make the weapon fully automatic,
meaning the user must pull the trigger only once to ﬁre re-
peated shots. The National Firearms Act (the Firearms Act)
deﬁnes a machine gun as any gun that can shoot more than
one shot “by a single function of the trigger.” 26 U.S.C.
§ 5845(b). Because an auto sear can transform certain ﬁrearms
into machine guns as so deﬁned, the Bureau of Alcohol, To-
bacco, Firearms and Explosives (ATF) decided in 1981 to de-
ﬁne auto sears as machine guns; this deﬁnition does not re-
quire the auto sear to be installed or even owned in conjunc-
tion with a compatible riﬂe. ATF Ruling 81-4, 27 C.F.R.
§ 479.11 (hereinafter Ruling 81-4). (This portion of the ATF’s
regulations was previously codiﬁed at 27 C.F.R. § 179.11 and
some materials referenced in this opinion continue to refer to
part 179.11.) Ruling 81–-4 brought auto sears under the Fire-
arms Act’s regulatory scheme, which demands that all ma-
chine guns be registered. Before 1981, there were no registra-
tion requirements for auto sears; since the 1981 ruling, it is
unlawful to possess an unregistered auto sear.
No. 22-1165 3

 In 1986, Congress amended the Gun Control Act to impose
a ban on machine guns. See Firearms Owners Protection Act,
Pub. L. No. 99-308, § 102, 100 Stat. 449, 453 (1986). The amend-
ments make it unlawful for “any person to transfer or possess
a machine gun,” though they do not apply to machine guns
lawfully possessed before the eﬀective date. 18 U.S.C.
§ 922(o). The current Gun Control Act “eﬀectively freezes the
number of legal machine guns in private hands at its 1986
level.” United States v. Kenney, 91 F.3d 884, 885 (7th Cir. 1996).
As applied to auto sears, the Act prevents private purchasers
from buying new auto sears or registering previously owned
auto sears after 1986.
 Roe purchased his auto sear in 1979, a time when these
devices were not subject to any registration requirements. He
contends that the commonly held interpretation of Ruling 81-
4 was that it had a grandfathering eﬀect; that is, auto sears
that were already manufactured or possessed were thought
to be exempted permanently from the taxation and registra-
tion requirements of the Firearms Act. On that understanding,
Roe never registered his auto sear. He contends, in addition,
that there were no meaningful opportunities to register pre-
1981 auto sears because everyone believed them to be exempt
from the registration requirements.
 To understand the basis for Roe’s position, it is helpful to
look at the text of Ruling 81-4 itself. The ruling reads:
 With respect to the machine gun classiﬁcation of
 the auto sear under the National Firearms Act, pursu-
 ant to 26 U.S.C. 7805(b), this ruling will not be applied
 to auto sears manufactured before November 1, 1981.
 Accordingly, auto sears manufactured on or after
4 No. 22-1165

 November 1, 1981, will be subject to all of the provi-
 sions of the National Firearms Act and 27 C.F.R. Part
 179.
Ruling 81-4. The question is thus what the ATF means when
it says that the ruling “will not be applied to auto sears man-
ufactured before November 1, 1981.” See id.
 The ATF asserts that this phrase is not ambiguous. The lan-
guage “pursuant to 26 U.S.C. 7805(b),” it argues, is a reference
to the applicable internal revenue laws. If that is correct, then
the Ruling states only that there is a retroactive exemption for
taxes related to pre-1981 auto sears. That reading is supported
by a later statement from the ATF found in an Editor’s Note
to the Federal Firearms Regulations Reference Guide, pub-
lished in September 2014:
 Regardless of the date of manufacture of a drop in
 auto sear (i.e., before or after November 1, 1981) the
 possession or transfer of an unregistered drop in auto
 sear (a machinegun as deﬁned) is prohibited by the Na-
 tional Firearms Act (NFA), 26 U.S.C. § 5861, and the
 Gun Control Act, 18 U.S.C. § 922(o). The last paragraph
 of ATF Ruling 81-4 only exempts the making, transfer,
 and special (occupational) taxes imposed by the NFA
 with respect to the making, manufacture, or transfer of
 drop in auto sears prior to November 1, 1981.
Id. The ATF insists that this has been the operative interpreta-
tion of Ruling 81-4 since it went into eﬀect. It was not, the
agency says, an across-the-board exemption for pre-1981 auto
sears from the Firearms Act’s registration requirements. The
result is that any presently unregistered auto sear is contra-
band, and that the 1986 machine gun ban imposed by the Gun
No. 22-1165 5

Control Act means that there is no way to register an auto
sear.
 B
 Apparently, Roe forgot for some time that he owned the
auto sear, but he remembered it in early 2020 and decided that
he wanted to sell it. In its unregistered state, however, the
auto sear can neither be lawfully transferred nor lawfully pos-
sessed. Hoping to create a path to legal ownership, Roe filed
the present action in February 2021, seeking declaratory and
injunctive relief that would force the ATF either to exempt his
auto sear from the Firearms Act’s registration requirements
or to permit him to register it. Roe also challenged the ATF’s
2014 Editor’s Note as an arbitrary and capricious agency de-
cision under the Administrative Procedure Act (APA) and
questioned the constitutionality of the Firearms Act as be-
yond the scope of Congress’s Commerce Clause power.
 The district court determined that it had subject-matter ju-
risdiction under 28 U.S.C. § 1331, the Declaratory Judgment
Act (28 U.S.C. § 2201), and 26 U.S.C. § 5872, because the threat
of civil forfeiture proceedings concretely supported Roe’s ac-
tion. Nonetheless, the court dismissed Roe’s complaint on
several grounds. First, it held that Roe lacked standing. Be-
cause it lacked the authority to issue the requested injunction,
it could not redress Roe’s claims. Second, the district court
found that the constitutionality of the Firearms Act and the
Gun Control Act had already been upheld. See Kenny, 91 F.3d
at 891. Finally, the court concluded that Roe’s claim was filed
after the APA’s six-year statute of limitations ran, see 28
U.S.C. § 2401, and even if it were timely, the Editor’s Note was
not a final agency action for APA purposes and was therefore
not subject to judicial review. This appeal followed.
6 No. 22-1165

 II
 Before we turn to Roe’s arguments, we ﬁrst must pose a
question of our own: should we permit Roe to litigate this case
under a pseudonym? Our courts are open to the public. One
consequence of that fact is that “[t]he use of ﬁctitious names
is disfavored.” Doe v. Blue Cross & Blue Shield United of Wis.,
112 F.3d 869, 872 (7th Cir. 1997). The Federal Rules of Civil
Procedure dictate that “the complaint must name all the par-
ties.” FED. R. CIV. P. 10(a). “Judicial proceedings are supposed
to be open … in order to enable the proceedings to be moni-
tored by the public. The concealment of a party’s name im-
pedes public access to the facts of the case, which include the
parties’ identity.” Doe v. City of Chicago, 360 F.3d 667, 669 (7th
Cir. 2004). That said, in narrow circumstances it is possible to
overcome the “presumption that parties’ identities are public
information, and the possible prejudice to the opposing party
from concealment.” Id. A party seeking to proceed by pseu-
donym must “show[] that the harm to the [party] … exceeds
the likely harm from concealment.” Id.
 Roe alleges that if he uses his real name, he will face pos-
sible criminal prosecution, if it turns out that his possession of
the auto sear is unlawful. There are shades of a Fifth Amend-
ment self-incrimination assertion in this argument. We have
limited anonymity to cases in which there is a danger of retal-
iation, see id., and “when necessary to protect the privacy of
children, rape victims, and other particularly vulnerable par-
ties or witnesses.” Blue Cross & Blue Shield United, 112 F.3d at
872. On the other side, we have refused to allow plaintiﬀs to
proceed anonymously merely to avoid embarrassment. See
Doe v. Village of Deerﬁeld, 819 F.3d 372, 377 (7th Cir. 2016). We
have never had to consider whether the threat of criminal
No. 22-1165 7

exposure should be a factor for district courts to weigh when
deciding whether to permit a plaintiﬀ to litigate under a pseu-
donym. One might argue that the danger of retaliation en-
compasses the threat of criminal prosecution, but this would
be breaking new ground. Cf. City of Chicago, 360 F.3d at 669
(indicating that we would protect a plaintiﬀ’s identity to pre-
vent their sexual orientation from becoming public); Doe ex
rel. Doe v. Elmbrook School Dist., 658 F.3d 710, 723–24 (7th Cir.
2011) (protecting plaintiﬀs’ identities to prevent retaliation
from the public for religious beliefs), rev’d en banc, 687 F.3d 840
(7th Cir. 2012) (vacating on other grounds).
 Several of our sister circuits, however, do permit district
courts to consider whether “plaintiﬀs were compelled to ad-
mit their intention to engage in illegal conduct, thereby risk-
ing criminal prosecution,” when determining whether the
plaintiﬀ’s privacy interests outweigh the interests of the pub-
lic and the defendant. See Doe v. Stegall, 653 F.2d 180, 185 (5th
Cir. 1981); see also Doe v. Porter, 370 F.3d 558, 560 (6th Cir.
2004); Does I thru XXII v. Advanced Textile Corp., 214 F.3d 1058,
1068 (9th Cir. 2000); Doe v. Frank, 951 F.2d 320, 323 (11th Cir.
1992) (all citing Doe v. Stegall with approval).
 This is a delicate issue—one that we need to approach
with care. We conclude that this is not the case in which to
make any broad pronouncements about criminal exposure.
Roe’s anonymity was not among the issues that the parties
presented and argued on appeal. Granted, the district court
ordered Roe to show cause why he could proceed anony-
mously, and the parties briefed the matter at that level. The
district court signaled its skepticism, explaining that
“[e]nforcement of the law is not likely to be a kind of harm
that would justify allowing a litigant’s identity to remain
8 No. 22-1165

hidden.” It also indicated its intention to comply with our in-
struction that “the judge has an independent duty to deter-
mine whether exceptional circumstances justify such a depar-
ture from the normal method of proceeding in federal courts.”
Blue Cross & Blue Shield United, 112 F.3d at 872. But in the end
it never formally decided the issue, opting instead to let Roe
remain anonymous, though only through the motion-to-dis-
miss stage.
 For good reason, it is unusual for plaintiﬀs to attempt to
litigate in this manner. We in no way encourage it. And even
if the public docket reﬂects a pseudonym, that does not ex-
cuse the duty to comply with Circuit Rule 26.1, which requires
even an anonymous litigant to disclose her true name on the
disclosure statement and ﬁle the statement under seal. 7TH
CIR. R. APP. P. 26.1(b). This rule is necessary “to enable a judge
of this court to determine whether he or she [should recuse]
from the case” and protect the impartiality of our proceed-
ings. Coe v. County of Cook, 162 F.3d 491, 498 (7th Cir. 1998).
We cannot allow Roe’s failure to follow Circuit Rule 26.1 to go
unremarked. By separate order issued today, we are requiring
Roe promptly to comply with that rule and to show cause
why he should not be sanctioned for his failure to do so at the
time the appeal was docketed.
 III
 We are now ready to turn to the question whether the dis-
trict court correctly dismissed Roe’s complaint for lack of Ar-
ticle III standing. This is a matter that receives de novo consid-
eration. See Matushkina v. Nielsen, 877 F.3d 289, 292 (7th Cir.
2017). “A plaintiﬀ has standing only if he can ‘allege personal
injury fairly traceable to the defendant’s allegedly unlawful
conduct and likely to be redressed by the requested relief.’”
No. 22-1165 9

California v. Texas, 141 S. Ct. 2104, 2113 (2021) (quoting Daim-
lerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)).
 The district court’s primary reason for its ﬁnding turned
on the redressability element of standing. We thus focus on
that issue in the analysis that follows.
 A
 “Redressability turns on the ‘connection between the al-
leged injury and the judicial relief requested.’” Pavlock v. Hol-
comb, 35 F.4th 581, 588 (7th Cir. 2022) (quoting Allen v. Wright,
468 U.S. 737, 753 n.19 (1984)). Roe’s injury stems from the fact
that he has been deprived of the value of his auto sear because
he may no longer lawfully possess or transfer it. Roe would
like us to order the ATF to exempt his auto sear from the Fire-
arms Act’s registration requirements or, in the alternative, to
create an amnesty period during which owners of pre-1981
auto sears may register them.
 The ATF insists that neither remedy is possible. As we
noted earlier, it takes the position that Ruling 81-4 does not
exempt pre-1981 auto sears from the Firearms Act’s registra-
tion requirements; it is only a retroactive tax exemption. Fur-
ther, the ATF argues that it lacks the authority to create the
requested amnesty period because any amnesty period must
“contribute to the purposes of [the Gun Control Act].” Gun
Control Act of 1968, Pub. L. No. 90-618 § 207, 82 Stat. 1213,
1236 (1968). Roe’s requested amnesty, it says, ﬂouts congres-
sional intent and the purpose of the Gun Control Act because
the 1986 amendments “prohibit[] the private possession of
machine guns not lawfully possessed before May 19, 1986.”
Farmer v. Higgins, 907 F.2d 1041, 1044 (11th Cir. 1990). The dis-
trict court agreed with the ATF that neither requested remedy
10 No. 22-1165

was available. Because no order permitted by the law could
provide Roe’s requested relief, the district court found that
Roe’s injury was not redressable.
 We agree with the district court with respect to the ﬁrst
half of its conclusion: neither of Roe’s requested remedies is
available. Consistently with our previous analysis from
United States v. Cash, we conclude that Ruling 81-4 does not
exempt pre-1981 auto sears from the Firearms Act’s registra-
tion requirements:
 [T]he proviso in the fourth paragraph of ATF Ruling
 81–4 means only that the Secretary will not collect any
 tax under 26 U.S.C. §§ 5801, 5811, or 5821 on account
 of auto sears manufactured or transferred before No-
 vember 1, 1981. The ruling does not—and cannot—ex-
 cuse compliance with criminal laws applicable at the
 time of post–1981 transfers.
149 F.3d 706, 707 (7th Cir. 1998); see also United States v. Dod-
son, 519 F. App’x 344, 349 (6th Cir. 2013) (“While the ATF may
retroactively exempt certain weapons from tax and regulation
requirements, it cannot exempt those same weapons from
prospective application of the law.”). Neither we nor the ATF
may excuse Roe’s compliance with the current criminal
laws—laws that have applied to his auto sear since 1981 and
render it contraband in its unregistered state.
 We also are persuaded that the ATF lacks the authority to
create an amnesty period that would increase the number of
lawfully owned, privately held machine guns in this country.
Not only would such a period undermine the purpose of the
Gun Control Act, but the considerations that have weighed in
favor of past amnesties are missing here. For example, the
No. 22-1165 11

ATF has created limited amnesty periods during which gun
owners could show that they were out of the country during
previous registration periods and promptly contacted the
ATF on their return to register their ﬁrearms. See U.S. Depart-
ment of the Treasury, Bureau of Alcohol, Tobacco, and Fire-
arms, Unpublished Memorandum: Eighteen Firearms Seized from
George Fassnacht, Case No. 63452-89-2533M (Jan. 15, 1993)
(permitting delayed registration of CIA agent’s ﬁrearms after
1968 amnesty period ended because he showed he was de-
ployed in Vietnam during the 1968 registration window).
These special circumstances do not apply to Roe or to the auto
sear that he forgot he owned.
 These two conclusions do not support a dismissal of Roe’s
complaint for lack of standing. The second one—that the ATF
lacks the authority to create Roe’s requested amnesty pe-
riod—may reﬂect the absence of redressability, but the ﬁrst is
merits-based. There would be remedies available if we agreed
with Roe’s understanding of the governing law. But we have
concluded that Ruling 81-4 is not susceptible to Roe’s pre-
ferred interpretation. This means that we have moved past the
threshold question of justiciability and on to the question
whether there is a “plausible” right to relief. See Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 556 (2007).
 B
 Because the government also moved for dismissal under
Federal Rule of Civil Procedure 12(b)(6) and preserved its ar-
gument on appeal, we may consider those arguments here.
We evaluate Roe’s complaint by “view[ing] it in the light most
favorable to the plaintiﬀ, taking as true all well-pleaded fac-
tual allegations and making all possible inferences from the
12 No. 22-1165

allegations in the plaintiﬀ’s favor.” AnchorBank, FSB v. Hofer,
649 F.3d 610, 614 (7th Cir. 2011).
 We accept that Roe lawfully purchased his auto sear in
1979 and that he genuinely believed he did not have to regis-
ter it after Ruling 81-4 went into eﬀect. But these facts do not
entitle Roe to relief. Ruling 81-4 still requires owners of pre-
1981 auto sears to register those parts. Roe provides no basis
for the ATF to treat his auto sear as anything other than con-
traband. Roe’s misinterpretation of Ruling 81-4 and his failure
to recall that he owned the auto sear do not support relief.
 Upon a timely complaint, we might have been able to di-
rect Roe to the Court of Federal Claims so that he could seek
compensation under the Tucker Act or the Little Tucker Act.
See Guedes v. Bureau of Alcohol, Tobacco, Firearms, and Explo-
sives, 356 F. Supp. 3d 109, 137 (D.D.C. 2019) (explaining that a
suit for compensation would adequately remedy the harm
done to owners of bump stocks who had the value of their
property reduced to zero by the recent bump stock ban). But
Roe’s claim is far from timely. It had to be ﬁled within six
years of accrual, see 28 U.S.C. § 2501, which for Roe would
have been in 1981 when his unregistered auto sear became
valueless contraband. Even if we dated the claim accrual to
1986 when registration of the auto sear became impossible un-
der the Gun Control Act’s machine gun ban, Roe’s suit still
would be too late.
 Without a valid claim for compensation and without a
properly stated claim, Roe is unfortunately out of options. His
complaint must be dismissed for failure to state a claim. Since
we aﬃrm the dismissal of the complaint on 12(b)(6) grounds,
we do not reach the question whether Roe’s complaint can be
construed as a timely challenge to a ﬁnal agency decision
No. 22-1165 13

under the APA. Roe has been required to register his auto sear
since 1981 and there is no intervening ATF decision that
would provide him with a foothold for relief. Nor do we dis-
turb our well-founded precedent that the Firearms Act and
the Gun Control Act are constitutional.
 IV
 We AFFIRM the district court’s decision to dismiss Roe’s
complaint, although we modify the judgment to reﬂect a dis-
missal with prejudice for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6).