In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 06-3455 & 06-3763

WEYERHAEUSER COMPANY,

*Petitioner and Intervening Respondent*,

*v.*

UNITED STATES RAILROAD RETIREMENT BOARD,

*Respondent,*

and

B.B., K.N., G.S., et al.,

*Intervening Respondents and Petitioners.*

_____

Petitions for Review of an Order
of the United States Railroad Retirement Board.
No. 06-26 (June 22, 2006)

_____

ARGUED JUNE 1, 2007—DECIDED SEPTEMBER 24, 2007

_____


Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Under the Railroad Retirement Act ("RRA"), an employee who works for a railroad employer is entitled to benefits based, in part, on the employee's years of service with that employer. The intervening respondents received their paychecks from

Weyerhaeuser Company ("Weyerhaeuser), but they worked for DeQueen and Eastern Railroad ("DeQueen"), which is a subsidiary of Weyerhaeuser. Railroad carriers such as DeQueen are covered employers under the RRA. Weyerhaueser did not credit these employees for that railroad service. The Railroad Retirement Board ("Board") found in favor of four of the employees and credited them for their prior service. Weyerhaeuser does not dispute that four of the intervening respondents should be credited retroactively for four years' service. The Board, however, determined that the four employees were entitled to retroactive RRA service credit beyond the four years automatically allowed by statute. The Board also concluded that the other two intervening respondents were not entitled to retroactive RRA service credit. Weyerhaeuser appeals from the Board's order granting the four employees retroactive service credit beyond four years. The four employees granted retroactive service credit intervened and appeal, claiming they were entitled to additional years of service credit, even beyond the years awarded. The two employees denied retroactive service credit also intervened, claiming they were also entitled to retroactive service credit. We affirm in part, reverse in part, and remand in part.

## I.

This case involves the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et. seq.* ("RRA"). The RRA provides "a system of annuity, pension, and death benefits for employees of designated classes of employers," *Railroad Concrete Crosstie Corp. v. Railroad Retirement Bd.*, 709 F.2d 1404, 1409 (11th Cir. 1983) (internal citation omitted), similar to the Social Security Act. *See Peppers v. Railroad Retirement Bd.*,

728 F.2d 404 (7th Cir. 1983) (noting that because of the similarities between the RRA and the SSA, the same analysis applies on appeal). The RRA applies only to employers that provide railroad services. *See* 45 U.S.C. § 231(a) (2000) (defining the term "employer" under the RRA).

The Board determined that the petitioner in this appeal, Weyerhaeuser Company ("Weyerhaeuser"), is not an employer under the RRA. *See* Weyerhaeuser Car Shop, B.C.D., 03-40 (U.S. R.R. Ret. Bd. May 8, 2003) *(Employer Status Deter.).*[1] However, a Weyerhaeuser subsidiary, DeQueen and Eastern Railroad ("DeQueen"), is a covered employer under the RRA.

The intervening respondents and petitioners, Ben Bramlett, Karen Neumeier, Gil Sharp, Deborah Ruth, Carol Honea and Larry Potts,[2] were all treated as Weyerhaeuser

---

[1] *Available at* http://www.rrb.gov/blaw/bcd/bcd03-40.htm (last visited Aug. 1, 2007).

[2] In their briefs on appeal, the six employees were all identified solely by their initials. At oral argument, we inquired as to why, and were informed that it is the Board's practice so as to maintain the privacy of the parties. The parties proffered no other justification. However, "[j]udicial proceedings are supposed to be open, . . . in order to enable the proceedings to be monitored by the public. The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Although "the concealment of a party's name is [not] always improper[,] [t]he presumption [is] that parties' identities are public information . . . ." *Id.* That presumption can be overcome "by showing that the harm to the plaintiff (normally

(continued...)

employees for payroll purposes, although they all per-
formed services for DeQueen. They each received checks
from Weyerhaeuser and, in turn, Weyerhaeuser charged
DeQueen for their salaries. Weyerhaeuser did not file RRA
returns reporting compensation for Sharp, Ruth, Honea, or
Potts, and only started filing RRA returns for Bramlett and
Neumeier in the mid-1980's.

In 2002, the Board initiated an audit of Weyerhaeuser.
Following the audit, the Board concluded that certain
employees who were paid by Weyerhaeuser, but who
performed work for DeQueen, should be considered
employees of DeQueen for purposes of RRA coverage.[3]
Specifically, in May 2003, the Board concluded the because

---

[2] (...continued)
the plaintiff is the party whose identity is concealed) . . . exceeds
the likely harm from concealment." *Id.* In this case, the parties
provided no justification for the use of pseudonyms, other than
that it is the Board's practice to do so to protect the privacy of
the employees. (It is clearly not a question of protecting the
employees from retaliation, as Weyerhaeuser knows the
identity of the claimants.) A mere desire for privacy, how-
ever, does not overcome the presumption that a party's identity
is public information. Accordingly, we identify the parties
by their names.

[3] An employee is a covered employee under the RRA, if, among
other things, he is "in the service of" an RRA employer. 45
U.S.C. § 231(d)(1). An employee is "in the service of" an RRA
employer if "(A) he is subject to the continuing authority of the
employer to supervise and direct the manner of rendition of his
service, or (B) he is rendering professional or technical services
and is integrated into the staff of the employer, or (C) he is
rendering, on the property used in the employer's operations,
personal services the rendition of which is integrated into the
employer's operations . . . ." *Id.*

Weyerhaeuser employee Potts had provided a portion of his services to DeQueen and was "integrated" into DeQueen's staff and railroad operations, he was covered by the RRA. Potts, B.C.D. 03-40.2 (U.S. R.R. Ret. Bd. May 12, 2003) (Employee Serv. Deter.).[4] The Board concluded that Potts' service should have been credited under the RRA and granted him retroactive service credit for four years, "as permitted by section 211.16." Section 211.16 and its statutory counterpart, 45 U.S.C. § 231h, both provide for time limits for correcting records of compensation. Section 211.16 provides:

> The Board's record of the compensation reported as paid to an employee for a given period shall be conclusive as to amount, or if no compensation was reported for such period, then as to the employee's having received no compensation for such period, unless the error in the amount of compensation or the failure to make return of the compensation is called to the attention of the Board within four years after the date on which the compensation was required to be reported to the Board as provided for in § 209.6 of this chapter.

20 C.F.R. § 211.16.[5] In other words, any compensation

---

[4] *Available at* http://www.rrb.gov/blaw/bcd/bcd03-40.2.htm (last visited Aug. 1, 2007).

[5] Similarly, 45 U.S.C. § 231h provides: "The Board's record of the compensation so returned shall be conclusive as to the amount of compensation paid to an employee during each period covered by the return, and the fact that the Board's records show that no return was made of the compensation claimed to have been paid to an employee during a particular period shall be taken as conclusive that no compensation was

(continued...)

possibly due but not paid or not credited more than four years before the Board receives notice of a deficiency is not recoverable, i.e., the non-payment is final. Because the filing deadline for service records for each calendar year is the last day of February of the following year, when the Board issued its May 2003 decision as to Potts, the service records for the years 1998 and earlier were deemed conclusive. Accordingly, as a result of the Board's May 2003 decision, Potts received retroactive service credit for the years 1999 through 2002. Potts sought reconsideration of the Board's decision, requesting additional retroactive service credit beyond the four-year limit based on 20 C.F.R. § 211.16(b). Section 211.16(b) provides: "The Board may correct a report of compensation after the time limit set forth in paragraph (a) of this section where the compensation was posted or not posted as the result of fraud on the part of the employer." Potts argued that a 1995 efficiency study prepared for Weyerhaeuser by Anacostia & Pacific Company, Inc. ("Anacostia") showed that Weyerhaeuser fraudulently failed to file RRA service records on his behalf. In the efficiency study, Anacostia stated that DeQueen's "practice of contracting with [Weyerhaeuser] for the entire mechanical work force as well as certain accounting personnel is subject to challenge by the Railroad Retirement Board ('RRB'). In essence, the RRB position is that railroads cannot escape payment of Railroad Retirement and Unemployment Insurance Taxes by

---

[5] (...continued)
paid to such employee during that period, unless the error in the amount of compensation returned in the one case, or the failure to make return of the compensation in the other case, is called to the attention of the Board within four years after the day on which return of the compensation was required to be made."

contracting an integral railroad function to an affiliate under common ownership." The Board denied Potts' request for reconsideration, finding that Potts' allegations of fraud were "not meritorious." *See* Potts, B.C.D. 05-21 (U.S. R.R. Ret. Bd. May 17, 2005) (Employee Serv. Deter. Recon.).[6] The Board added:

> [T]he Board regards the contention that fraud was committed as a very serious accusation and does not find that the failure of Weyerhaeuser to report [Potts'] service and compensation constituted fraud even though a management study stated that certain Weyerhaeuser Company employees worked exclusively for [DeQueen] (and another affiliated railroad). The Board notes that the same report also stated that the employees had "apparently performed considerable mechanical or maintenance work for [Weyerhaeuser Company] and third parties."

*Id.*

Then, in May 2005, the Board found that Sharp, Ruth, and Honea, who were all supervised by DeQueen employees and were subject to the continuing authority of DeQueen, were covered employees. Accordingly, the Board found their service creditable under the RRA. *See* Weyerhaeuser Car Shop, B.C.D. 05-17 at 8 (U.S. R.R. Ret. Bd. May 4, 2005) (Employer Status/Employee Serv. Deter.).[7] The Board further granted them retroactive service credit "to the extent permitted by section 9 of the Railroad Retirement Act and section 211.16 of the Board's regula-

---

[6] *Available at* http://www.rrb.gov/blaw/bcd/bcd05-21.htm (last visited Aug. 1, 2007).

[7] *Available at* http://www.rrb.gov/blaw/bcd/bcd05-17.htm (last visited Aug. 1, 2007).

tions." *Id.* at 8-9. That amounted to retroactive service credit for Sharp, Ruth, and Honea for the years 2001 through 2004. Sharp, Ruth, and Honea requested additional service credit beyond four years, also relying on 20 C.F.R. § 211.16(b)'s fraud exception. The Board denied their request for additional service credit, concluding that "as a general rule the Board's record of compensation and service may not be corrected after four years in the absence of fraud. A majority of the Board finds no evidence of fraud in the record . . . ." *See* B.C.D. 05-39 (U.S. R.R. Ret. Bd. Aug. 5, 2005) (Retro. Employee Serv. Credit, Employer Status Deter.).[8]

After the Board issued its decision denying Sharp, Ruth, and Honea's request for additional service credit, their attorney, who also represented Potts, requested reconsideration of the Board's decisions denying all four claimants retroactive service credit beyond four years.[9] The four again argued that Weyerhaeuser had committed fraud and that they were entitled to RRA service credit beyond the four years already authorized. On June 22, 2006, the Board reversed its earlier holding as to all four employees and granted them retroactive service credit back to 1995—beyond the four-year limit set forth in section 211.16. *See* Weyerhaeuser Car Shop, B.C.D. 06-26 (U.S. R.R. Ret. Bd. June 22, 2006) (Employer Status/Employee Serv. Deter. on

---

[8] *Available at* http://www.rrb.gov/blaw/bcd/bcd05-39.htm (last visited Aug. 1, 2007).

[9] Potts had already requested reconsideration and the Board had denied his request for reconsideration." *See* Potts, B.C.D. 05-21. Thus, this was his second request for reconsideration.

Recon.).[10] After noting its prior decisions, in which it found no evidence that Weyerhaeuser committed fraud, the Board cited the 1995 Anacostia report and concluded that that report "did or should have put Weyerhaeuser on notice of the nature of the issue regarding the reporting of service performed by its employees for the affiliated carriers and created reasonable expectations that such service should be creditable under the Acts." *Id.* at 3. The Board added that "neither section 9 of the RRA nor section 211.16 of the [Board's] regulations should be applied to bar" the employees from receiving additional retroactive service credit. *Id.* at 3-4. Accordingly, the Board ordered that Sharp, Ruth, Honea, and Potts receive retroactive service credit back to 1995, *id.* at 3, which in effect added six years of service credit for Sharp, Ruth, and Honea and four years for Potts. Weyerhaeuser filed a petition for review of the June 22, 2006, decision in this court. Sharp, Ruth, Honea, and Potts intervened in this appeal, arguing that the Board erred in limiting the retroactive service credit to 1995, maintaining they are entitled to retroactive service credit for every year they worked at Weyerhaeuser.

Two other employees of Weyerhaeuser, Ben Bramlett and Karen Neumeier, also intervened in this appeal. Bramlett and Neumeier both were treated as employees subject to the RRA provisions since 1984, but they claim that they were entitled to retroactive service credit for the years from 1973 through 1984 and 1975 through 1984, respectively. In August 2005, the Board concluded that Bramlett and Neumeier were not entitled to retroactive service credit because more than four years had passed and there was no

---

[10] *Available* at http://www.rrb.gov/blaw/bcd/bcd06-26.asp (last visited Aug. 1, 2007).

evidence in the record of employer fraud in connection with Bramlett and Neumeier. *See* B.C.D. 05-39.

Bramlett and Neumeier sought reconsideration of that decision. The Board affirmed its initial determination, concluding again that there was no evidence of fraud for the period of 1973 through 1984. B.C.D. 06-26 at 4. In so ruling, the Board added that Bramlett and Neumeier are precluded from obtaining retroactive service credit "more than twenty years after the alleged conduct" by Weyerhaeuser. B.C.D. 06-26 at 4. Bramlett and Neumeier seek to overturn the Board's decision on appeal.

## II.

This court has jurisdiction to review the final decisions of the Board pursuant to 45 U.S.C. § 355. We review the Board's decision to determine if it is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Moreover, a Board decision must have a reasonable basis in the law. *Holman v. U.S. R.R. Ret. Bd.*, 253 F.3d 975, 978 (7th Cir. 2001).

On appeal, Weyerhaeuser first claims that the Board's decision to grant retroactive service credit beyond four years to Sharp, Ruth, Honea, and Potts lacks a reasonable basis in the law because the regulations allow for such retroactive service credit only in the event of fraud, and the Board concluded that there was no evidence of fraud. We agree. As quoted above, 20 C.F.R. § 211.16 provides that the Board's records are conclusive unless (1) "RRA employment taxes previously had been paid and either error correction or principles of equity require that the employee

received additional retroactive service credit"; or (2) "the employee's erroneous service record is due to employer fraud." 20 C.F.R. § 211.16. The parties agree that the first exception does not apply, thus leaving the fraud exception as the only possible way for the intervening parties to obtain retroactive service credit beyond four years.

In this case, though, the Board found there was no evidence of fraud. *See* Potts, B.C.D. 05-21 at 3. ("[T]he Board regards the contention that fraud was committed as a very serious accusation and does not find that the failure of Weyerhaeuser to report [Potts'] service and compensation constituted fraud even though a management study stated that certain Weyerhaeuser Company employees worked exclusively for [DeQueen] (and another affiliated railroad)."); B.C.D. 05-39 at 1-2 (denying Sharp, Ruth, and Honea's request for additional years of retroactive service credit, concluding that "as a general rule the Board's record of compensation and service may not be corrected after four years in the absence of fraud. A majority of the Board finds no evidence of fraud in the record . . . ."). Significantly, on reconsideration the Board did *not* find that Weyerhaeuser had committed fraud. Rather, the Board concluded that the 1995 Anacostia report "did or should have put Weyerhaeuser on notice of the nature of the issue regarding the reporting of service performed by its employees for the affiliated carriers and created reasonable expectations that such service should be creditable under the Acts." *See* B.C.D. 06-26 at 3. The Board then added that "neither section 9 of the RRA nor section 211.16 of the [Board's] regulations should be applied to bar" the employees from receiving additional retroactive service credit. *Id.* at 3-4.

That, however, is exactly what section 211.16 of the Board's regulations does—bars employees from receiving

additional retroactive service credit absent limited circum-
stances, such as employer fraud. Specifically, 20 C.F.R.
§ 211.16(c) provides that "[e]xcept as provided in para-
graph (b)(1) of this section, no employee may be cred-
ited . . . beyond the four year period . . . unless the em-
ployee established to the satisfaction of the Board that all
employment taxes . . . have been paid with respect to the
compensation and service." Because employment taxes
have not been paid on behalf of the six claimants, service
credit is only creditable beyond four years, as provided
in paragraph (b)(1), and that section states that "[t]he
Board may correct a report of compensation after [four
years] where the compensation was posted or not posted
as the result of fraud on the part of the employer." 20
C.F.R. § 211.16(b)(1).

On appeal, the Board readily admits that it "did not find
that Weyerhaeuser Company committed fraud, as that
term is commonly used, in connection with Weyerhaeuser
Company's failure to report compensation for the individu-
als for whom it now concedes are or were employees of the
DeQueen and Eastern Railroad." Board's Respondent,
Cross-Respondent Brief at 12-13. The Board attempts to
sidestep this concession in two main ways. First, it notes
that § 211.16(b)(1) does not define "fraud," and then the
Board points out that it had previously found that the
"knowing failure to report compensation and service as
required under the Railroad Retirement Act, met the
standard set forth in section 211.16(b) and would support
the requirement of retroactive crediting of service and
compensation." Board's Respondent, Cross-Respondent
Brief at 11. Similarly, the intervening respondents point to
other Board decisions granting retroactive service credit
beyond four years, which were based on an employer's
knowing failure to report compensation. Intervening
Respondents and Petitioners' Brief at 15-16. From this, we

understand the Board and intervening respondents to be arguing that, since the regulations do not define "fraud," the Board has discretion to interpret that term to mean the "knowing failure to report compensation." The problem with this argument is that the Board, in this case, did not find that Weyerhaeuser had "knowingly failed to report compensation." Rather, the Board found that the Anacostia report "did or should have put Weyerhaeuser on notice of the nature of the issue regarding the reporting of service performed by its employees for the affiliated carriers and created reasonable expectations that such service should be creditable under the Acts." *See* B.C.D. 06-26 at 3. Thus, rather than apply the "knowing" standard the Board seemingly puts forth for fraud on appeal, the Board applied a "did or should have had notice" standard. (And even then, the Board did not conclude that Weyerhaeuser knew or should have had notice that it was required to report compensation under the RRA—it merely concluded that the report "did or should have put Weyerhaeuser *on notice of the nature of the issue*, . . . and created reasonable expectations that such service should be creditable under the Acts.") Thus, the Board's decision cannot stand even applying its favored definition of "fraud."[11]

---

[11] Because the Board did not find that Weyerhaeuser had knowingly failed to report compensation for the intervening respondents and concedes that the Board did not find Weyerhaeuser had committed fraud as that term is commonly used, we need not decide whether a knowing failure to report compensation would qualify as "fraud" under 20 C.F.R. § 211.16(b)(1). Other portions of the regulations provide that "[u]nlike fraud, fault does not require a *deliberate intent to deceive*," indicating that fraud requires a deliberate intent to deceive. 20 C.F.R. § 255.11(b). Additionally, the consultant's
(continued...)

The Board also puts forth an equitable argument for sustaining its decision: It argues that because "Weyerhaeuser Company knew or should have known that the individuals should be receiving credit for service performed for DeQueen and Eastern while they were on the Weyerhaeuser Company payroll," Board's Respondent, Cross-Respondent Brief at 13, "it is equitable that these individuals receive credit under these circumstances." *Id.* Initially, we note that in its decision on reconsideration, the Board never found that Weyerhaeuser "knew or should have known that the individuals should be receiving credit . . . ." Rather, as noted above, the Board found that Weyerhaeuser knew or should have known "of the issue." Knowing that something is an issue is quite different than knowing that you are legally required to report service credit. Regardless, the regulations that the Board itself promulgated do not provide an equitable exception to the four-year bar. Rather, the only exception relevant to this appeal is the fraud exception. Yet on reconsideration the Board did not address the question of fraud, instead stating that it "need not make a finding as to whether Weyerhaeuser willfully failed to report certain of its employees under the [RRA]." B.C.D. 06-26 at 3. The Board cannot ignore its own regulations merely because it finds them inequitable under the circumstances of this case. *See Rhodes v. Johnson*, 153 F.3d 785, 789 (7th Cir. 1998) (noting that while an agency has discretion to reasonably interpret its regulations, this "must not be confused with the power

---

[11] (...continued)
report may not prove intent or knowledge, since the report came from an independent consultant and not the Board and merely raised the issue with Weyerhaeuser; the report did not conclude that the employees were definitively subject to taxes, but rather that the practice may be "subject to challenge."

to rewrite" unambiguous regulations); *Pearce v. Director, Office of Workers' Comp. Programs*, 647 F.2d 716, 726 (7th Cir. 1981) (stating that "it is well settled that reasonable regulations promulgated pursuant to statutory authority have the force and effect of law. . . . [and] an agency is bound by its own regulations"). *See also Panhandle E. Pipe Line Co. v. Fed. Energy Regulatory Comm'n*, 613 F.2d 1120, 1136 (D.C. Cir. 1979) (noting that "[t]he fact that a regulation as written does not provide [the agency] a quick way to reach a desired result does not authorize it to ignore the regulation or label it 'inappropriate' "). Therefore, there is no basis in law for the Board's decision on reconsideration that Sharp, Ruth, Honea, and Potts are entitled to retroactive service credit beyond four years.

Weyerhaeuser argues that upon overturning the Board's decision on reconsideration, there is no need for remand because the Board had already concluded that there was no evidence of fraud. The Board in its earlier decisions had found that there was no evidence of fraud. *See* B.C.D. 05-21; B.C.D. 05-39. But those decisions are not before this court. Rather, the only decision before this court is the Board's decision on reconsideration. Although the Board's decision on reconsideration cannot stand because it failed to apply the fraud standard established in its own regulations, the intervening respondents had sought reconsideration of the Board's initial decision that there was no evidence of fraud. The Board never addressed that question on reconsideration. *See* B.C.D. 06-26 at 3 (stating that the Board "need not make a finding as to whether Weyerhaeuser willfully failed to report certain of its employees under the [RRA]"). Accordingly, we must remand this case to the Board to rule on the motion for reconsideration applying the proper standard, at least as to intervening respondents Sharp, Ruth, and Honea. There is

no need to remand for intervening respondent Potts because, as discussed below, the Board violated its own regulations in reopening Potts' case.

As set forth above, the Board originally concluded in May 2003 that Potts was entitled to retroactive service credit for the years 1999 through 2002. Potts sought reconsideration of that decision, arguing that he was entitled to credit for additional years that he had worked for Weyerhaeuser. The Board denied Potts' request for reconsideration in May 2005, and Potts did not appeal that decision. However, when the Board granted Sharp, Ruth, and Honea's request for reconsideration, the Board also "reopen[ed] the decision regarding [Potts'] request for reconsideration," and then concluded that Potts should receive credit back to 1995. *See* B.C.D. 06-26 at 4. The regulations, though, limit the Board's authority to reopen decisions relating to employee status determination. The Board's regulations provide for the "Finality of determinations issued under this part," stating:

> Any determination rendered by the Board at the initial or reconsideration stages shall be considered a final determination and shall be binding with respect to all parties unless reversed on reconsideration or upon judicial review. A final determination may be reopened at the request of a party who was, or could have been, a party to the final determination when the party alleges that the law or the facts upon which the final determination was based . . . changed sufficiently to warrant a contrary determination.[12]

---

[12] A "final determination" is defined as "[a]ny determination rendered by the Board at the initial or reconsideration stages." 20 C.F.R. § 259.6.

20 C.F.R. § 259.6. Thus, the Board only had the power to reopen Potts' case if "the law or the facts upon which the final determination was based . . . changed sufficiently to warrant a contrary determination." *Id.*

On appeal, the Board does not claim that the law changed. Rather, the Board asserts that its decision granting Sharp, Ruth, and Honea reconsideration is a "change of facts" which justifies the Board's reopening of its decision as to Potts. Board's Respondent, Cross-Respondent Brief at 15. Section 259.6 of the regulations, however, only allows for the reopening of a decision if there was a change in facts "upon which the final determination was based. . . ." *Id.* But in denying Potts' request for reconsideration, the Board did not base its decision on the fact that Sharp, Ruth, and Honea were also denied retroactive service credit beyond four years; rather, the Board based its decision on the lack of evidence of fraud. Thus, none of the underlying facts upon which the Board's final determination as to Potts' request for reconsideration changed. Therefore, section 259.6 of the regulations does not authorize the Board to reopen Potts' case. While the Board argues that it would be inequitable to treat Potts differently than Sharp, Ruth, and Honea,[13] "[w]hen an administrative agency

---

[13] In making the equitable argument on appeal, the Board relies on the fact that on reconsideration, it granted Sharp, Ruth, and Honea retroactive service credit to 1995. That decision, however, has no basis in law, *see supra* at 15, and the only way that Sharp, Ruth, or Honea will receive additional service credit is if on remand the Board reverses its previous factual finding that there was no fraud on the part of Weyerhaeuser. Conversely, if the Board stands by its original

(continued...)

promulgates rules to govern its proceedings, these rules must be scrupulously observed . . . for once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules." *Black v. Interstate Commerce Comm'n*, 737 F.2d 643, 652 n.3 (7th Cir. 1984). We further noted in *Black,* "[i]f an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand." *Id.*

The Board also attempts to justify its decision to reopen Potts' case by noting that the three-member Board re-opened Potts' case on its own initiative and that "the Board has the discretion to reopen any case where the Board deems it proper to do so." Board's Respondent, Cross-Respondent Brief at 15. In support of its position, the Board cites 20 C.F.R. § 261.11, entitled: "Discretion of the three-member board to reopen or not to reopen a final decision." Potts likewise relies on section 261.11 as a basis for reopening his case. That section provides:

> In any case in which the three-member Board may deem proper, the Board may direct that any decision, which is otherwise subject to reopening under this part, shall not be reopened or direct that any decision, which is otherwise not subject to reopening under this part, shall be reopened.

20 C.F.R. § 261.11

While section 261.11 provides the Board with discretion to reopen cases that are not otherwise subject to reopening,

---

[13] (...continued)
factual finding of no fraud, then there will be no disparate treatment.

that language is modified by "under this part." "This part" is part 261. Further, 20 C.F.R. § 261.1(b) provides that "[a] *final decision* as that term is used in this part means any decision of the type listed in § 260.1 of this chapter . . . ." Section 260.1 provides for decisions by the Board on claims for benefits under the RRA.[14] Potts, however, was not seeking benefits under the RRA and the Board was not reopening a final decision of the type listed in § 260.1. Rather, the Board's decision concerned Potts' status as an employee under the RRA and that decision involved part 259. *See* 20 C.F.R. § 259. Thus, by its own terms, 20 C.F.R. § 261.11 does not apply to this case.

The Board does not cite any other statutory or regulatory provisions that would authorize it to reopen Potts' case, and thus has forfeited any other basis for reopening the

---

[14] Specifically, Section 260.1(a) provides: "Claims for benefits shall be adjudicated and initial decisions made by the Board concerning: (1) Applications for benefits under the Railroad Retirement Act; (2) The withdrawal of an application; (3) A change in an annuity beginning date; (4) The termination of an annuity; (5) The modification of the amount of an annuity or lump-sum benefit; (6) The reinstatement of an annuity which had been terminated or modified; (7) The existence of an erroneous payment; (8) The recovery of the amount of an erroneous payment; (9) The eligibility of an individual for a supplemental annuity or the amount of such supplemental annuity; (10) Whether representative payment shall serve the best interests of an annuitant as a result of that individual's incapacity to manage his annuity payments; and (11) Who shall be designated or continued as representative payee on behalf of an annuitant." 20 C.F.R. § 206.1(a).

case.[15] Since the only regulation applicable limits the Board's authority to reopen cases to circumstances not present here, the Board acted contrary to the law in reopening Potts' case, and that decision must be reversed. The Board may not like its regulations, but as noted above, "[w]hen an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed . . . for once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules." *Black*, 737 F.2d 643 n.3.

That brings us to Sharp, Ruth, Honea, and Potts' claim that the Board erred in limiting retroactive credit to 1995. While we must remand this case for the Board to apply the required fraud standard to determine whether Sharp, Ruth and Honea were entitled to retroactive credit to 1995, remand is not necessary to resolve Sharp, Ruth, Honea and Potts' petition challenging the Board's refusal to grant them credit for the earlier years. We review the Board's decision for substantial evidence. *Wassenberg v. U.S. R.Ret. Bd.*, 75 F.3d 294, 296 (7th Cir. 1996). Given this deferential standard, we conclude that the Board did not err in concluding that Sharp, Ruth, Honea, and Potts were not entitled to

---

[15] In his brief, Potts also points to 20 C.F.R. § 261.2(a) and § 261.2(b) as possible authority for the Board's decision reopening his case. Section 261.2 provides for conditions for reopening "[a] final decision," but as noted above, "final decision" for purposes of part 260 "means any decision of the type listed in § 260.1." Because Potts' case did not involve a type listed in § 260.1, it was not a final decision for purposes of § 261.2 and thus the grounds for reopening in § 261.2(a) and (b) do not apply.

additional years of service credit. The Anacostia Report
was not issued until 1995, and it was this report that the
Board concluded put Weyerhaeuser on notice of the issue
that it might need to treat some of its employees as employ-
ees under the RRA. While we leave for remand the ques-
tion of whether this report established fraud, we conclude
that the Board's decision that prior to that date there was
no evidence of fraud is supported by substantial evidence.
Accordingly, under these circumstances, we affirm the
Board's decision to deny these four claimants service credit
pre-dating the report.

Finally, Bramlett and Neumeier claim that the Board
erred in denying them any retroactive credit. Both Bramlett
and Neumeier were treated as employees subject to the
RRA since 1984, but they claim they were entitled to
retroactive service credit for all of the years they worked at
Weyerhaeuser, which would date back to the early 1970's.
The Board rejected their claim, concluding that it was the
1995 report that put Weyerhaeuser on notice of the RRA
reporting issue and that since those claimants had received
service credit since the 1980's, they were not entitled to any
additional retroactive service credit.

Again, our review is for substantial evidence. *See
Wassenberg*, 75 F.3d at 296. Given this deferential standard,
we conclude that the Board did not err in concluding that
Bramlett and Neumeier were not entitled to additional
years of service credit. The Anacostia Report was not
issued until 1995, and it was this report that the Board
concluded put Weyerhaeuser on notice of the issue that it
might need to treat some of its employees as employees
under the RRA. By 1995, however, Weyerhaeuser had
already been treating Bramlett and Neumeier as employees
under the RRA. While Bramlett and Neumeier point to

other evidence that they believe shows that Weyerhaeuser should have treated them as RRA employees since 1973, the Board did not find that evidence indicative of fraud, and it is not our place to second-guess the Board's factual determination. Accordingly, under these circumstances, the Board's decision to affirm its original decision denying Bramlett and Neumeier additional retroactive credit is affirmed.[16]

---

[16] Bramlett and Neumeier, along with intervening respondents Sharp, Ruth, Honea, and Potts, note that "[i]n the event that this Court finds evidence of intent to mislead insufficient to substantiate a finding of employer fraud on the current re-cord, then on remand for a hearing, the RRB could subpoena all individuals who have provided information in this case." Brief of Intervening Respondents and Petitioners at 25. They further note that they "specifically requested evidentiary hearing[s] on at least ten (10) occasions in the record [but] [t]hey never were given a hearing, . . . ." *Id.* at 27. It is unclear from these passing comments whether the six claimants were at-tempting to argue on appeal that the Board erred in denying their request for an evidentiary hearing. Their brief did not identify that as an issue on appeal. More significantly, the claimants did not cite any case law addressing whether this court has jurisdiction to review the Board's decision not to hold an evidentiary hearing, and, if so, the appropriate stand-ard of review. By not presenting or developing this argument on appeal, the claimants have waived any challenge to the Board's decision not to hold an evidentiary hearing. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (not-ing that failure to develop arguments on appeal constitutes waiver).

III.

The Board's regulations limit retroactive service credit to four years, absent an exception to the general four-year bar. The Board initially concluded as to Sharp, Ruth, Honea, and Potts' claims for additional service credit that the only exception possibly applicable in this case—employer fraud—did not apply because there was no evidence that Weyerhaeuser had committed fraud. On reconsideration, the Board granted retroactive service credit beyond the four years, to 1995, without finding that Weyerhaeuser had committed fraud. This contravened the governing regulations and was thus contrary to law. Accordingly, we reverse the Board's decision on reconsideration as to Sharp, Ruth, Honea, and Potts. We further remand this case to the Board for it to rule on Sharp, Ruth, and Honea's motion for reconsideration applying the fraud standard mandated by the Board's regulations. Because the Board had already denied Potts' motion for reconsideration and violated its own regulations in reopening that decision, there is no basis for a remand for Potts. As to Bramlett and Neumeier: the Board's decision denying them retroactive service credit is supported by substantial evidence and, accordingly, we affirm that decision. We also affirm the Board's decision denying Sharp, Ruth, Honea and Potts retroactive credit for years pre-dating the 1995 report, as that decision was also supported by substantial evidence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*